# Martin's Appeal.

A landlord is not entitled out of the sales of the goods of the tenant by execution during the term of one lease, to rent agreed to be paid in advance on another lease not yet commenced.

If a landlord to whom rent is due, takes from his tenant personal property of greater value, which the sheriff has levied in execution, and appropriates it to pay a debt due to him by the tenant, he cannot afterwards receive the amount of his rent out of the proceeds of the sheriff's sale.

THIS was an appeal by Dr George Martin from the decree of the Court of Common Pleas of *Montgomery* county, refusing to allow him to take out of court certain moneys claimed by him as rent, which the sheriff had paid into court. Charles Cox obtained judgment against James Maxwell at February term 1841, and issued a *fieri facias* to May term 1841, which the sheriff levied on personal property of the defendant, being on premises which he had rented

[Martin's Appeal.]

of Dr Martin. The sheriff sold this property under the *fieri facias* on the 31st March 1841, having received notice on the day of sale of Dr Martin's claim from his attorney, first verbally and the next day in writing. It appeared from the evidence, that on the 3d October 1840, Dr Martin, as assignee of John A. Martin, leased the premises, consisting of a house, &c., situate in Whitemarsh township, Montgomery county, to James Maxwell, till the 1st of April following, at the rent of $50 for that period. On the 10th of March 1841, he made another lease of the premises for the term of one year from the 1st of April next, at the rent of $150, in half-yearly payments in advance. The sheriff's levy was made on the 22d of March. After the levy, according to the evidence of Maxwell, the Dr called and obtained from Maxwell's wife a horse, wagon and harness, of Maxwell's, worth more than the first half-year's rent, under the second lease, which with Maxwell's permission he afterwards kept for the rent. He now claimed the $50 due on the first lease, to be payable to him as landlord out of the proceeds of the goods sold on Cox's execution.

*Powell*, for appellant, contended that the landlord was entitled to be paid his rent under the first lease out of the proceeds of the execution. *West* v. *Sink*, (2 *Yeates* 274); *Binns* v. *Hudson*, (5 *Binn.* 506); *Lichtenthaler* v. *Thompson*, (13 *Serg. & Rawle* 158). Notice by the landlord to the sheriff is sufficient, if given at any time before the money is paid over. *Ege* v. *Ege*, (5 *Watts* 134); *Beekman* v. *Lansing*, (3 *Wend.* 449); 4 *Cow.* 576. Here notice was given immediately after the sale. The sheriff had ample time to extend his levy if necessary, as the writ was not returnable till May.

*Mulvany*, contra, was stopped by the court.

The opinion of the Court was delivered by

SERGEANT, J.—Whether when rent is reserved payable in advance the landlord has a right to distrain immediately on the rent's becoming due, is doubted in *Diller* v. *Roberts*, (13 *Serg. & Rawle* 60): and that doubt, it appears to me, is greater where the question is on the right to distrain for such rent before the commencement of the lease. But it seems clear that under the provisions of the 83d section of the Act of 16th June 1836, relating to executions, where a sale is made of the tenant's goods under an execution during the term of one lease, the landlord cannot claim rent agreed to be paid in advance on another lease not yet commenced. The section applies only to goods being on *lands demised* for life, years or otherwise, and liable to the distress of the landlord, and they are made liable for rent due not exceeding a year. The second demise from the 1st April ensuing is as much a distinct and independent transaction as if it had been to a

v. — T *

[Martin's Appeal.]

stranger. The sale, then, being made on the 31st March during the current lease, rent due on another lease commencing at a subsequent day could not be included, even supposing rent payable can ever be included before the tenant has enjoyed the possession and performed the covenants on his part for the time on account of which such rent is payable.

Then the case is that Dr Martin being entitled to nearly $50 for his six months' rent on the first lease, goes to the tenant and takes a horse, wagon and harness of the defendant of more than that value, which had been levied on by the sheriff, and with it pays a debt to himself, and then claims to take his rent of $50 out of the sales of the residue of the levy. This we concur with the court below in thinking he had no right to do. It would be giving the landlord a double privilege if he could first go and take from the tenant goods to the amount of his rent or more which the sheriff had levied on and apply them to his own use in payment of a debt for which he had no lien or pledge, and afterwards receive the amount of his rent out of the proceeds of the sheriff's sale. It would also deprive the execution creditor of just so much, which might have been raised on the execution if the goods had been left. The right given to the landlord by the Act of Assembly would, in this way, be liable to abuse, to the manifest injury of third persons and to purposes of collusion. The landlord has a single right to be paid out of the goods levied, the rent due on the demised premises: but then he must not interfere with the goods so as to impair the rights of others, or abstract from the funds out of which all the claimants are to be paid.

Judgment affirmed.