# Moss's Appeal.

Three years prior to a sheriff's sale of a tenant's goods found on the demised premises, the tenant incurred a forfeiture of his lease, six months' rent being then in arrear: *Held*, that the landlord was entitled to be paid the rent in arrear, at the time the forfeiture was incurred, out of the proceeds of sale.

The landlord's right to be paid out of the proceeds of sale depends on his power to distrain on the goods sold; and a landlord having power to distrain, after the determination of the term, he is entitled to payment out of the proceeds of a sheriff's sale of goods found on the demised premises, under an execution against the lessee.

The landlord's right to distrain after the termination of the term, is without limitation as to time; the statute gives him this right, wherever the rent is in arrear, and he retains the title.

APPEAL from the Common Pleas of *Chester county*.

This was an appeal by Alfred A. Moss from the decree of the court below, distributing the proceeds of a sheriff's sale of the personal property of The Montgomery County Mining Company.

On the 8th May 1851, Thomas Davis and wife demised to Michael Ryan, his heirs, executors, administrators, and assigns, for the term of ninety-nine years, the entire mining right to a certain tract of land owned by the lessors, in Schuylkill township, Chester county; and the lessee, for himself, his heirs, executors, administrators, and assigns, covenanted to pay to the lessors, or their legal representatives, the sum of $250 in advance, every six months, until the ore-leave should amount to $1000 per

[Moss's Appeal.]

year, when the said semi-annual payments should cease. It was also thereby agreed, that if the lessee, his heirs, executors, administrators, or assigns, should cease mining operations on the said tract, for twelve consecutive months, then the said lease should become void and of none effect.

This lease was assigned to The Montgomery County Mining Company, which ceased mining operations on or about the 8th April 1854, after which period no work was done by the company.

On the 13th January 1858, a *fieri facias* was issued on a judgment obtained by Dendy Sharwood, for the use of Alfred A. Moss, against The Montgomery County Mining Company; by virtue of which certain personal property of the company found upon the demised premises, was sold by the sheriff, and the proceeds of sale, amounting to $519.40, were paid into court for distribution.

Out of the proceeds of sale, the lessors claimed the sum of $250, for six months' rent, which became due and payable in advance, on the 8th May 1854, by the terms of the lease. The court below decreed in favour of the lessors, and directed the payment to them of six months' rent out of the fund for distribution; whereupon this appeal was taken by the execution-creditor.

*Mc Veagh*, for the appellant.—At the time of the sheriff's sale, there was no existing tenancy between Davis and the Mining Company. The lease had long before determined, under the clause of forfeiture contained in it. The landlord is only entitled to claim out of the proceeds of goods found "upon lands which are demised;" and this implies an existing tenancy: Martin's Appeal, 5 *W. & S.* 220; Parker & Keller's Appeal, 5 *Barr* 390; Hodgson *v.* Gascoigne, 5 *B. & A.* 88; Beltzhoover *v.* Waltman, 1 *W. & S.* 417; Bain *v.* Clark, 10 *Johns.* 422; Greider's Appeal, 5 *Barr* 425.

*U. V. Pennypacker*, for the appellee.—The Act of 1772 gives the landlord the right to distrain after the determination of this lease; and he may do so at any time during the continuance of his title: Lichtenthaler *v.* Thompson, 13 *S. & R.* 158; Clifford *v.* Beems, 3 *Watts* 247. And the landlord's right to payment out of the proceeds of a sheriff's sale depends, not on the existence of the tenancy, but on the liability of the goods to be distrained for rent: Bromley *v.* Hopewell, 2 *Harris* 403; Parker & Keller's Appeal, 5 *Barr* 393.

The opinion of the court was delivered by

WOODWARD, J.—The lease of 8th May 1851 was to become

void and of no effect, if the lessee or his representatives should cease mining on the premises for twelve consecutive months.

The auditor finds that the engine of the mining company, who had succeeded to the rights of the original lessee, stopped about the 8th or 9th of April 1854, and that after that period no work was done by the company. At the end of twelve consecutive months from that period, therefore, there was, by force of the original contract, a surrender of the term to the landlord, and a merger of it in his reversionary estate. There was also a complete and final severance of the relation of landlord and tenant for all purposes. From April 1855, there was no lease, no landlord or tenant, and of course no rent.

But though mining operations ceased in April 1854, Davis was entitled to be paid his rent for the year of inaction that was to work a forfeiture of the lease, because, by the terms of the lease, it was to be paid in advance—" the sum of $250 in advance every six months." He claims out of the money in court six months' rent from the 8th May 1854. That money was brought into court upon a *fi. fa.*, issued to April Term 1858, under which personal property of the mining company, found on the demised premises, had been sold.

It is objected, that the landlord is not entitled to be paid his half year's rent, because of the dissolution of the relation of landlord and tenant, three years before the levy and sale by the sheriff; and Greider's Appeal, 5 *Barr* 425, is relied on. We do not think that case rules the question here. The lease was surrendered there by the tenant, between the time of the levy and sale of his goods, and when no rent was due and payable to the landlord. The effort was to apportion the rent, and thus claim it against the execution-creditor; but the court held that those adjudged cases which permitted landlords to apportion rent, and claim up to the time of the sheriff's levy, did not apply to a case in which there had been an express and voluntary surrender of the term. It was argued on authority, that the surrender drowned and extinguished the lesser estate of the tenant, and that rent, reserved and issuing out of that estate, but *not due at the time of surrender*, was also extinguished. But in our case the rent was due, as I have shown, at the time of surrender, and that distinguishes it strongly from Greider's Appeal.

Still, however, the landlord's right is to be measured by the Acts of Assembly. The 15th section of the Act of 16th June 1836 provides, that the goods and chattels being in or upon any messuage, lands, or tenements, which are or shall be demised for life, or years, or otherwise, taken by virtue of an execution, and liable to the distress of the landlord, shall be liable for the payment of any sums of money due for rent, at the time of taking

such goods in execution, provided that such rent shall not exceed one year's rent."

It is argued with great confidence, that there must be an existing tenancy at the time of the execution, to entitle the landlord to claim his rent; and an inaccurate remark to this effect is quoted from a Common Pleas opinion, that was affirmed in Parker & Keller's Appeal, 5 *Barr* 392. I say it is inaccurate, because the landlord's right to claim, as against the execution-creditor, exists whenever the goods sold are "liable to the distress of the landlord," and by the 8th section of the Act of 21st March 1772, "it shall and may be lawful for any person or persons having any rent in arrear, or due upon any lease for life or lives, or for one or more years, or at will, ended or determined, to distrain for such arrears, after the determination of the said respective leases, in the same manner as they might have done if such lease or leases had not been ended or determined—provided that such distress be made during the continuance of such lessor's title or interest." The statute of 8th Anne limited the landlord's right to distress to six months after the determination of the lease, but ours gives it whenever the rent is in arrear, and the landlord retains his title.

Now, if there must be, as is argued, a subsisting tenancy to give the landlord a right to participate in the proceeds of a sale of goods found on his premises, there must be a subsisting tenancy to give him the right of distress, which were to repeal the Act of 1772. No attentive reader of the Act of 1836 can doubt, that the legislature meant to substitute the landlord's claim on the proceeds of the execution sale for his right of distress. Where one existed the other was intended to be conferred. The substitution was limited to a year's rent, but to that extent the substitution was complete. True, the premises are spoken of as "demised" premises, and this court refused, in Martin's Appeal, 5 *W. & S.* 220, to allow a landlord to take out of the sale of his tenant's goods rent agreed to be paid in advance on another lease not then commenced. "The second demise," said Judge SERGEANT, "is as much a distinct and independent transaction as if it had been to a stranger." Nobody would contend that a tenant's goods should pay rent due from a stranger. But though the Act of 1836 is expressed with less precision than that of 1772 (legislative language is not one of the things which improve with time and growth), yet its necessary construction seems to be, that the "person having any rent in arrear," to use the words of the Act of 1772, who may levy a distress on goods, may claim a year's rent out of the sale of them; and that the reference to the demised premises may be satisfied, by considering it, not as defining a subsisting lease, but as pointing out the place where the goods are to be levied. Certainly the legislature of 1836 did not mean

[Moss's Appeal.]

to repeal the Act of 1772, but rather to multiply the remedies of the landlord, and they defined the extent of the new remedy by referring themselves to the old one by distress. And we are taught by the case of Morgan *v.* Moody, 6 *W. & S.* 335, that the Act is to be liberally construed. I concur entirely with the ruling of the point in question in Bromley *v.* Hopewell, 2 *Harris* 402, and with the remark of the learned judge who delivered the opinion that the words "liable to the distress of the landlord," had for their object the exemption from liability to satisfy rent, such goods as are commonly exempted from distress, but we cannot agree that this is the only effect of these words. They are not words of mere restriction, but of definition rather. Undoubtedly, the landlord cannot claim the proceeds of goods that he could not have distrained; but what right have we to say, in the face of the statute, that he may not claim the proceeds of goods that were liable to his distress? No reasoning, that we have met in reported cases, would seem to justify so narrow a construction of a remedial statute.

It follows, from our reading of these Acts of Assembly, that Davis and wife might have distrained these goods, though their lease was ended three years before, and therefore that they were entitled to claim out of the proceeds half a year's rent due and in arrear, and accordingly the decree of the court is affirmed.