## GROH ET AL. *v.* KIM

[No. 23, September Term, 1971.]

*Decided October 14, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Vincent R. Groh* for appellants.

*Allen M. Baumgardner* for appellee.

SINGLEY, J., delivered the opinion of the Court.

This quarrel between a group of landlords and the creditors of their tenant had its origins deep in our history. It would seem that Good Queen Anne, the daughter of James II and the last and most Anglican of the Stuarts, was a particular favorite of the residents of Maryland, who named their capital and one of their counties in her honor. She responded during her short reign (1702-1714) with a fair quantity of communion plate, which she gave to the parishes of the proprietorship, as well as with certain of the Acts of her Parliaments, which, by virtue of Art. 3 of the Declaration of Rights of 14 August 1776, became and remained a part of the organic law of Maryland.[1]

It is one of these Acts, 8 Anne, c. 14, § 1 which lies at the root of this case: [2]

> "For the more easy and effectual Recovery of Rents reserved on Leases for Life or Lives, Term of Years, at Will, or otherwise; Be it enacted by the Queen's most excellent Majesty, by and with the Advice and Consent of the Lords Spiritual and Temporal, and Commons in Parliament assembled, and by the Authority of the same, That from and after the first Day of *May*,

---

1. Art. 3 of the 1776 Declaration of Rights provided, in part:
"That the inhabitants of Maryland are entitled to the common law of England, and the trial by jury, according to the course of that law, and to the benefit of such of the English statutes, as existed *at the time of their first emigration*, and which, by experience, have been found applicable to their local and other circumstances, *and of such others as have been since made in England, or Great-Britain*, and have been introduced, used and practiced by courts of law or equity; * * *." (italics added)
Art. 3 of the 1851 Declaration of Rights contained a similar provision, except that for the first italicized phrase there was substituted "on the fourth day of July, seventeen hundred and seventy-six" and the second italicized phrase was dropped.
As thus altered, the text appeared in similar form as Art. 4 of the 1864 Declaration of Rights and as Art. 5 of the 1867 Declaration of Rights.
2. Subsections 2 through 8 of 8 Anne, c. 14 deal largely with the remedy of distraint.

142

which shall be in the Year of our Lord one thousand seven hundred and ten, no Goods or Chattels whatsoever, lying or being in or upon any Messuage, Lands, or Tenements, which are or shall be leased for Life or Lives, Term of Years, at Will, or otherwise, shall be liable to be taken by Virtue of any Execution on any Pretence whatsoever, unless the Party at whose Suit the said Execution is sued out, shall before the Removal of such Goods from off the said Premisses, by Virtue of such Execution or Extent, pay to the Landlord of the said Premisses, or his Bailiff, all such Sum or Sums of Money as are or shall be due for Rent for the said Premisses at the Time of the taking such Goods or Chattels by Virtue of such Execution: Provided the said Arrears of Rent do not amount to more than one Year's Rent, and in case the said Arrears shall exceed one Year's Rent, then the said Party, at whose Suit such Execution is sued out, paying the said Landlord, or his Bailiff, one Year's Rent, may proceed to execute his Judgment as he might have done before the making of this Act; and the Sheriff or other Officer is hereby impowered and required to levy and pay to the Plaintiff as well the Money so paid for Rent, as the Execution-Money." 2 *Alexander's British Statutes* 921 (Coe ed. 1912).

It may well be that the precise issue here presented is unlikely to arise again, since 8 Anne, c. 14 was expressly repealed in its entirety effective 1 July 1971 by Chapter 649 of the Laws of 1971.

What happened here was that D. Webster Groh, Jr., and others (the Grohs), owners of the property at 22 West Franklin Street in Hagerstown, on 30 October 1966 leased a storeroom and basement at that address to Crider Leather Goods Company (Crider) for a term of five years at a monthly rental of $250, payable on the

first day of each month, in advance. While Crider continued to pay rent for the Franklin Street store, it would appear that at some unspecified time, the business was transferred to another store which Crider had leased at Long Meadow Shopping Center, near Hagerstown. Things were not going well, and commencing in October, 1969, creditors began to execute on Crider's goods in this order:

| | | | |
|---|---|---|---|
| 10/15/69 | Aphrodite G. Martin | $ | 18.11 |
| 1/ 6/70 | J. M. Bucheimer | | 1,090.97 |
| 1/13/70 | Kingsley Machine | | 11.25 |
| 2/12/70 | Uniroyal, Inc. | | 689.03 |
| 2/19/70 | Reliable Luggage | | 212.84 |

$2,022.20

In April of 1970, Crider moved its goods from Long Meadow Shopping Center to 22 West Franklin Street, and resumed retail operations there. At that time, rent for the four months January-April was due and unpaid in the amount of $1,000.

By 1 May, arrearages of rent were $1,250, and another levy followed:

| | | |
|---|---|---|
| 5/ 4/70 | H. D. Lee Co. | $ 357.00 |

On 1 June, the rent was $1,500 in arrears, and there was a new series of levies:

| | | | |
|---|---|---|---|
| 6/23/70 | B. J. Kim Corp. | $ | 875.78 |
| 6/30/70 | Service Mfg. Co. | | 281.62 |
| 7/21/70 | Tony Lama Co. | | 135.65 |
| 7/21/70 | Fiebling Chemical | | 115.05 |
| 7/21/70 | Miller Harness | | 995.53 |
| 7/21/70 | Cont. Handbag | | 170.00 |
| 7/21/70 | Seward Luggage | | 99.50 |
| 7/30/70 | Baltimore Luggage | | 709.49 |
| 7/30/70 | Int. Bus. Machine | | 723.05 |

$4,105.67

The total of the claims on which execution had been had was $6,484.87. On 5 September 1970, goods belonging to Crider were sold by the sheriff for $4,621.28, an amount well below the aggregate of creditors' claims.

Then there followed a dispute over the allocation of the sale proceeds. The Grohs claimed priority for rent from 1 January to 30 June, 1970, at $250 per month, or $1,500, as well as an allowance for storage for the period commencing 1 July, during which Crider's goods were at 22 West Franklin Street, awaiting the sheriff's sale. From an order denying priority to the claim for arrearages in rent but allowing $250 for the period when the goods were stored at 22 West Franklin Street awaiting the sheriff's sale, the Grohs have appealed.

B. J. Kim, the creditor who levied on the goods on 23 June 1970 to enforce payment of a claim of $875.78, was successful in persuading the court below that since all the goods were in *custodia legis* from and after the Martin levy of 15 October 1969, creditors' claims took precedence over the claim for rent, and had to be satisfied in order of execution until the proceeds of sale were exhausted. This, however, missed the point. The very purpose of the statute of 8 Anne, c. 14, § 1 was to give to the landlord a remedy in substitution for his right of distraint, which he lost when the levy was made, *First Nat'l Bank v. Corporation Comm.*, 161 Md. 508, 157 A. 748, 86 A.L.R. 1407 (1932) ; *Thomson v. Baltimore & Susquehanna Steam Co.*, 33 Md. 312, 319 (1870). *See generally* 1 Tiffany, *The Law of Landlord and Tenant*, § 183 (2d ed. 1910) ; Rhynhart, *Notes on the Law of Landlord and Tenant*, 20 Md. L. Rev. 1, 36 (1960) ; 33 C.J.S. *Executions* §§ 128 b, 247 c (1942).

It seems to us that the Grohs have the better of the argument, at least as to the rent due on or before 1 May. They say, and we agree, that the levies made between 15 October 1969 and 19 February 1970 take precedence over the claim for unpaid rent because they were made before any rent was due or before the goods were at 22 Franklin Street. Arrearages amounting to $1,250 on 1 May took

precedence over H. D. Lee Company's levy for $357.00 on 4 May, and, had any sale proceeds remained, the rent due 1 June would have taken precedence over B. J. Kim's levy for $875.78 on 23 June, *Washington v. Williamson,* 23 Md. 244, 252 (1865). The charge for storage, when the goods were in possession of the sheriff, was properly taxed as a part of the costs of the sale.

The Pennsylvania cases construing their Act of June 16, 1836, P. L. 755, § 83, 68 P. S. § 321 (1965), which tracks the language of 8 Anne, c. 14, § 1 have reached this result. *Wadas v. Sharp,* 27 Pa. Super. 233 (1905) relied on the language of the Supreme Court of Pennsylvania in *Leaming's Appeal,* 5 W.N.C. 221 (Pa. 1878) :

> "The Act of 16 June, 1836, gives to a landlord a lien for any sums of money *due* for rent at the time of taking such goods in execution. * * *"

> "If, however, another execution be levied afterward, and in the mean time another sum of money for rent has fallen due, it is quite as clear that the rent thus accrued will again take the preference, and what remains will go to the execution. Now, if a third execution be afterward levied on the same goods and still another sum of rent shall have accrued, it is obvious the same result would take place, if a surplus were left to go to the third execution. But it is equally obvious that, if the proceeds of sale had been exhausted by application to the second execution, the subsequently accruing rent has nothing to grasp, neither rent nor execution taking anything. * * * It is not the fact that the sale is made on all the executions levied on the goods which governs, but the falling due of the rent, which must accrue before the proceeds of sale are exhausted in order to come in for a share."
> (emphasis in original)

Adopting this rationale, the disbursement of the sale proceeds should have been as follows:

| | | |
|---|---|---|
| Receipts from sale | | $4,621.28 |
| Less: | | |
| Total expenses of sale | $ 809.69 | |
| Storage after padlocking by sheriff | 250.00 | |
| Total costs on Fi-Fa's to be paid as result of sale | 186.75 | |
| Levies prior to 1 April | 2,022.20 | |
| | | $3,268.64 |
| Arrearages of rent due 1 May | | 1,250.00 |
| Applied in partial satisfaction of levy of H. D. Lee Company for $341.00 4 May | | 102.64 |
| | | 4,621.28 |

There is an intimation in Exhibit A in the record that a creditor described only as Cantor may have levied on Crider's goods on 6 March 1970 to enforce payment of a claim of $735.00, although no reference is made to it elsewhere. If, in fact, this claim remains unpaid it would be added to the amount required to satisfy the levies made before 1 April and the amount available for the Grohs would be correspondingly reduced.

> *Order reversed, case remanded for entry of order conformable with this opinion; costs to be paid by appellee.*