## Herr & Company, Inc. v. Parr

*William M. Gross,* for Union Deposit Mall Equities Limited.

WICKERSHAM, *J.,* April 4, 1977 — This case presents the question as to whether a landlord, who has established no lien by levy or distraint, has any claim upon the proceeds of funds derived from a sheriff's sale made pursuant to levy upon goods of the tenant by a creditor having a perfected purchase money security agreement with that tenant. . . .

Our plaintiff asserts that a landlord's right of lien cannot exist vis-à-vis a secured creditor without an actual distraint or levy; or that even should such a lien exist, it is subservient to such a security interest. At common law, where the landlord's right of distress with respect to chattels found on the demised premises did not constitute a lien upon such chattels, such an assertion would be most tenable. See, Trickett, The Law of Liens in Pennsylvania §330; see, also, 4 Collier on Bankruptcy §67.23.

In Pennsylvania, however, we have been blessed with statutory modification of this common law rule. The Act of June 16, 1836, P.L. 755, sec. 83, 68 P.S. §321, purportedly establishes the landlord's preference in proceeds of execution:

"§321. Landlord's preference in proceeds of execution

"The goods and chattels being in or upon any messuage, lands, or tenements, which are or shall be demised for life or years, or otherwise taken by virtue of an execution, and liable to the distress of the landlord, shall be liable for the payment of any

sums of money due for rent at the time of taking such goods in execution: Provided, That such rent shall not exceed one year's rent. 1836, June 16, P.L. 755, §83."[1]

It is only the Act of May 7, 1929, P.L. 1589, sec. 1, as amended, 68 P.S. §322, dealing with the rights of a landlord who has distrained, that makes any mention of lien.[2] It has been held, however,

---

1. This enactment is merely a shortened form of the fourth section of the act of March 21, 1772:

"That the goods or chattels lying or being in or upon any messuage, lands or tenements, which are or shall be leased for life or lives, term of years, or otherwise, taken by virtue of any execution, shall be liable to the payment of all such sum or sums of money as are or shall be due for rent for the premises, at the time of taking such goods and chattels by virtue of such execution. And the said Sheriff shall, after sale of the said goods and chattels, pay to the landlord . . . such rent so due, if so much shall be in his hands, and if not, so much as shall be in his hands, and apply the overplus thereof, if any, towards satisfying the debt and costs in such execution mentioned. Provided, always, That the said rent . . . shall not exceed one year's rent."

2. "§322. Distress for rent; sale under execution; priority

"Whenever any sheriff shall, pursuant to an execution issued, levy upon any goods and chattels upon which there is at the time a distress for rent, or whenever a receiver, a receiver in bankruptcy, or a trustee in bankruptcy shall be appointed for any person, firm, or corporation upon whose goods and chattels there is at the time a distress warrant for rent, any sale, pursuant to such levy or distress for rent, shall be stayed pending the sale of such goods and chattels by the sheriff, receiver, receiver in bankruptcy, or trustee in bankruptcy; and the sheriff, receiver, receiver in bankruptcy, or trustee in bankruptcy may proceed and sell such goods and chattels, as provided by existing law for sales by such officer, and, in such cases, the claim for rent, together with costs of executing such landlord's warrant, may be filed with the sheriff, the receiver, the receiver in bankruptcy, or the trustee in bankruptcy, as

that "the right of the landlord to payment from the proceeds of an execution, in preference to the execution creditor, is co-extensive with, and limited by, his *right* to distrain the goods taken in execution." Trickett, supra, §322. As this language indicates, it is not the actual distraint which determines a landlord's preference, but the possibility of distraint as outlined in the Act of May 7, 1929. The operation of the landlord's lien is, therefore, independent of the proceedings which enforce it: Tiffany, Landlord and Tenant §321(f) (1910). Of all the reported cases Moss's Appeal, 35 Pa. 162, 165, 166 (1860), most clearly supports this construction:

"No attentive reader of the Act of 1836 can doubt, that the legislature meant to substitute the landlord's claim on the proceeds of the execution sale for his right of distress. Where one existed the other was intended to be conferred. The substitution was limited to a year's rent, but to that extent the substitution was complete . . . Certainly the legislature of 1836 did not mean to repeal the Act of 1772, but rather to multiply the remedies of the landlord, and they defined the extent of the new remedy by referring themselves to the old one by distress . . . Undoubtedly, the landlord cannot claim the proceeds of goods that he could not have distrained; but what right have we to say, in face of the statute, that he may not claim the proceeds of goods that were liable to his distress? No reasoning, that we have met in reported cases, would seem to justify so narrow a construction of a reme-

the case may be, and shall be a lien on the proceeds of the sale of such personal property, and be paid first out of the proceeds of such sale. 1929, May 7, P.L. 1589, §1; 1931, June 22, P.L. 889, §1."

dial statute." Accord, Leaming's Appeal, 5 W.N.C. 221 (Pa. 1878); Wadas v. Sharp, 27 Pa. Superior Ct. 233 (1905). In the most recent case we have been able to find on this subject, the Maryland Court of Appeals, in giving precedence to a landlord's claim over the claim of a judgment lien creditor, relied heavily on language in Leaming's Appeal, supra, to the effect that:

"The Act of 16 June, 1836, gives to a landlord a lien for any sums of money *due* for rent at the time of taking such goods in execution (emphasis in original)."

See, Groh v. Kim, 263 Md. 140, 282 A.2d 461 (1971).[3]

We find no language in any of our appellate court reports which would support the plaintiff's claim. We are not unmindful of the fact that all necessary steps have been taken by the plaintiff to perfect its security interest. In the face, however, of such clear statutory construction as has been propounded above, the security interest must be subordinated to this Commonwealth's policy of preferring a landlord.[4]

---

3. Both the Maryland and Pennsylvania statutes were rooted in the language of the Act of Parliament, 8 Anne, c. 14, §1, which deals with the common law remedy of distraint.

4. Nor are we unmindful of the line of cases emanating from our federal courts which would appear to contradict the above. See, for example, In re Uni-Lab, Inc., 282 F.2d 123 (3rd Cir. 1960), to the effect that the Act of 1836 merely protects a landlord's predistraint priority over general creditors only, and that no lien arises absent distraint (citing Judge, now Chief Justice, Eagen in Dickson v. Monarch Anthracite Mining Co., 45 Lack. Jur. 201, 211). Accord, In re George Townsend Co., 180 F. Supp. 625, 627 (E.D. Pa. 1957); In Re Lebed, 39 F. Supp. 457, 461 (E.D. Pa. 1941). To the extent that these cases contradict wording of our appellate courts we are, of necessity, bound by the latter. It must be noted, how-

As the landlords here gave the sheriff proper notice, and the goods sold on execution were concededly liable to distress, then the landlord is entitled to his statutorily created preference.

## ORDER

And now, April 4, 1977, the following amended schedule is hereby ordered:

| | |
|---|---:|
| Sheriff's Costs | $ 337.80 |
| Locks | 14.00 |
| Prothonotary Costs | 19.50 |
| 5 percent Collection | 3,640.89 |
| Rent Claim Harrisburg Shopping Center, Inc. | 11,087.74 |
| Rent Claim Union Deposit Mall Equities Limited Partnership | 8,028.56 |
| Applied to Judgment #272 June Term 1975 | |
| | $23,128.49 |

ever, that these cases apply a different statute than that before us, namely, The Federal Bankruptcy Act, 11 U.S.C.A. §1 et seq., July 1, 1898, 30 Stat. 544 as amended. Without indulging in an explication of the vagaries of bankruptcy law, suffice it to say that the relationship between section 64 and section 67c of the Bankruptcy Act, attempting as they do to protect the federal priority scheme from disruption by disguised priorities created by state legislatures, create circuity of liens problems in which secured claims which under state law are subordinated to landlord liens ostensibly are to be paid before section 64(a) priorities, in which landlord liens have only a fifth-level priority by virtue of section 67(c). Cf. In Re Quaker City Uniform Co., 238 F.2d 155 (3rd Cir. 1956). In bankruptcy, therefore, rent claims which have not been secured by distraint are given a fifth-level priority in section 64(a)(5) behind all creditors with valid liens. Section 67c invalidates every "statutory lien for rent" and every "lien of distress for rent whether statutory or not." Such liens are then placed in a 64(a)(5)-level priority by virtue of section 67c(2). Absent federal pre-emption of state priorities, therefore, the landlord's preference remains intact.