In the Matter of GREAT BASIN HOLDING CORPORATION, a Nevada corporation, d/b/a Golden Rope I and Golden Rope II, Bankrupt.

**Bankruptcy No. BK-LV 77–301.**

United States Bankruptcy Court, D. Nevada.

Feb. 3, 1981.

**80**

Mark A. Solomon of Lionel, Sawyer & Collins, Las Vegas, Nev., for claimant, First Wisconsin Nat. Bank of Milwaukee.

Roger A. Wirth of Jolley, Urga & Wirth, Las Vegas, Nev., for Trustee, Michael Daly.

## MEMORANDUM OPINION

LLOYD D. GEORGE, Bankruptcy Judge.

The Trustee in the above-entitled bankruptcy proceeding has objected to the claim of First Wisconsin National Bank of Milwaukee, insofar as it would attribute a priority status to the amount due this creditor.

In response, the Bank has set forth an ancient basis for its alleged priority position, claiming a common law right of distress as a commercial landlord, which it asserts would give it a position superior to that of the general creditors herein. Despite an absence of Nevada case law directly on point, the Court finds that the general proposition of First Wisconsin National Bank is correct and will, therefore, deny the objection of the Trustee.

As its starting point, the court notes that a landlord has at his disposal two possible methods for obtaining a priority position, as to three-months' rent, under the pre-October 1, 1979 Bankruptcy Act. Both mechanisms have their initial foundation in Section 64(a)(5) of the Act, which reads as follows:

> "The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment shall be . . . (5) . . . rent owing to a landlord [1] who is entitled to priority by applicable State law or [2] who is entitled to priority by paragraph (2) of subdivision c of Section 67 of this Act; *Provided, however,* That such priority for rent to a landlord shall be restricted to the rent which is legally due and owing for the actual use and occupancy of the premises affected, and which accrued within three months before the date of bankruptcy."

(Emphasis original). Section 67(c)(2) of the Act gives priority to those claims underlying liens which are made invalid against a trustee in bankruptcy under Section 67(c)(1). Subsection (C) of the latter section provides, in turn, that

> "[t]he following liens shall be invalid against the trustee: . . . (C) every statutory lien for rent and every lien of distress for rent, whether statutory or not. A right of distress for rent which creates a security interest in property shall be deemed a lien for the purposes of this subdivision c."

Some considerable debate arose at the time Section 67(c)(1)(C) was last amended

(1966) as to the meaning of the final sentence therein. Marsh, "Triumph or Tragedy?: The Bankruptcy Act Amendments of 1966," 42 Wash.L.Rev. 681, 723–27 (1967). The interjection of the U.C.C. Article Nine concept of the "security interest" created substantial ambiguity as to what would be necessary for a right of distress to be endowed with the right of priority which flows from Section 67(c)(2). For the purpose of this proceeding, however, the Court will assume that, under applicable state law, the right of distress must give some sort of *immediate property interest*, as opposed to a simple *right by which a property interest can eventually be obtained*, before Sections 67(c)(1)(C) and 67(c)(2) may be utilized by a landlord seeking a priority in bankruptcy.

■ At common law, and under statutes paralleling the common law, the right of distress created no immediate interest against the personal property of a tenant. *See In re Uni-Lab, Inc.*, 282 F.2d 123 (3d Cir. 1960); *Hay v. Patrick*, 79 F.2d 407 (3d Cir. 1935); *Shalet v. Klauder*, 34 F.2d 594 (3d Cir. 1929); *In re West Side Paper Co.*, 162 F. 110 (3d Cir. 1908). Rather, the landlord's right of distress remained inchoate until actual distraint of the personal property in question occurred. Since First Wisconsin National Bank does not claim to have warranted the seizure of the Bankrupt's personal property, the court must find that the Section 67(c)(2) avenue to priority is blocked as to the Bank's claim.

Nevertheless, a very good argument can be made that Nevada law would still provide the Bank with a priority, even though it possesses only an inchoate distress right. *See In re Goldstein*, 34 F.Supp. 876 (E.D.Pa. 1940). This could be accomplished not through reference to the right of distress, itself, but by an application of the early 18th Century English statute of 8 Anne, ch. 14, which, in antedating the Declaration of American Independence, has become a part of the common law of Nevada. *See Evans v. Cook*, 11 Nev. 69, 74–75 (1876) (applying the statute of 9 Anne, ch. 14, to void agreements for the payment of gaming debts);

*Ex Parte Blanchard*, 9 Nev. 101, 105 (1874) (also, noting, however, that pre-1776 English statutes must be "applicable to our situation" for adoption into Nevada's common law). Section 1 of this statute provides:

"For the more easy and effectual Recovery of Rents reserved on Leases for Life or Lives, Term of Years, at Will, or otherwise; Be it enacted by the Queen's most excellent Majesty, by and with the Advice and Consent of the Lords Spiritual and Temporal, and Commons in Parliament assembled, and by the Authority of the same, That from and after the first Day of *May*, which shall be in the Year of our Lord one thousand and seven hundred and ten, no Goods or Chattels whatsoever, lying or being in or upon any Messuage, Lands, or Tenements, which are or shall be leased for Life or Lives, Term of Years, at Will, or otherwise, shall be liable to be taken by Virtue of any Execution on any Pretence whatsoever, unless the Party at whose Suit the said Execution is sued out, shall before the Removal of such Goods from off the said Premises, by Virtue of such Execution or Extent, pay to the Landlord of the said Premises, or his Bailiff, all such Sum or Sums of Money as are or shall be due for Rent for the said Premises at the Time of the taking such Goods or Chattels by Virtue of such Execution: Provided the said Arrears of Rent do not amount to more than one Year's Rent, and in case the said Arrears shall exceed one Year's Rent, then the said Party, at whose Suit such Execution is sued out, paying the said Landlord, or his Bailiff, one Year's Rent, may proceed to execute his Judgment as he might have done before the making of this Act; and the Sheriff or other Officer is hereby impowered and required to levy and pay to the Plaintiff as well the Money so paid for Rent, as the Execution-Money."

2 Alexander's British Statutes 921 (Coe ed. 1912), cited in *Groh v. Kim*, 263 Md. 140, 282 A.2d 461, 462 (1971).

On its face, this statute would seem to provide a plain preference or priority to landlords over executing general creditors, in conjunction with their right of distress, even where the latter right remains in its inchoate form. *See Groh v. Kim, supra* (holding such to be the case, but limiting its effect to creditors executing after unpaid rent has accrued). "It ... appears throughout the judicial history of bankruptcy statutes, that a bankruptcy proceeding has been variously termed 'a statutory execution,' 'an equitable execution,' 'the equivalent of an execution,' 'in effect an attachment and injunction,' and has been uniformly regarded, in essence, though not in form, an execution which draws to itself for enforcement, by reason of section 64b, cl. 5, of the Bankruptcy Act, such priorities as are accorded landlords in the distribution of proceeds of execution sales by the law of the state in which the bankruptcy proceeding is being carried on. *Bank v. Sherman*, 101 U.S. 403, 25 L.Ed. 866; *Mueller v. Nugent*, 184 U.S. 1, 22 S.Ct. 269, 46 L.Ed. 405." *Rosenblum v. Uber*, 256 F. 584, 594 (3d Cir. 1919). *See also In re Goldstein, supra; In re Wall*, 60 F.2d 573 (E.D.Miss.1932).

In contradiction to the use made by First Wisconsin National Bank of the common law distress right (and, though not specifically mentioned by either side, of the statute of 8 Anne, ch. 14), the Trustee maintains that such rights were replaced by the Nevada Landlord Lien Act, Nev.Rev.Stat. 108.510, *et seq.*, which has since been declared unconstitutional by the United States District Court for the District of Nevada, *see Adams v. Joseph F. Sansom Investment Company*, 376 F.Supp. 61 (D.Nev.1974), under the *Fuentes* and *Sniadach* doctrines. *See Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Sniadach v. Family Finance Corp.*, 395 U.S. 337 (1969).

Upon reading the *Fuentes, Sniadach,* and *Adams* cases, however, the Court is convinced that the Trustee's constitutionality concerns are misplaced with respect to the rights of First Wisconsin National Bank under the statute of 8 Anne, ch. 14. This latter "common law" legislation has little to do with the process by which a tenant is deprived of his personal property. Ostensibly, an executing creditor would be expected to take his debtor's property through a constitutional means. 8 Anne, ch. 14, simply states that such an executing creditor must pay off accrued rents, up to one year's worth, on the real property whereon execution property is located, prior to his being able to retain any of the proceeds of the said collection procedure.

In a sense, the statute of 8 Anne, ch. 14, has little direct connection with the common law right of distress or its statutory counterparts, other than the fact that its conceptual roots may well be buried in that ancient feudal right. It creates a priority in proceeds, but not an interest in property or a right to seize property. In practical fact, it constitutes little more than an additional cost of execution to general creditors. Hence, even assuming that the common law right of distress might suffer from constitutional deficiencies (a questionable proposition due to the self-help nature of the remedy, *see* 2 W. Blackstone, Commentaries on the Laws of England 1497–1508 (W. Jones ed. 1916) (but note that actual distraint was usually accomplished by way of a warrant issued to a bailiff *or sheriff*)), the statute of 8 Anne, ch. 14, would remain untouched by such difficulties.

■ A second point implicitly raised by the Trustee is, essentially, that the ancient right of distress is no longer "applicable to our situation" today. The same might be said of the statute of 8 Anne, ch. 14. To be sure, both rules have their origins in feudal landholding patterns and customs, which have steadily become more alien to modern commercial landlord-tenant realities. *See* 2 W. Blackstone, *supra* at 1497 n. 7; *Smith v. Wheeler*, 4 Okl. 138, 44 P. 203 (1896). Nevertheless, this Court, as a federal tribunal, is extremely reluctant to ignore the common law of the state in which it sits, without an obvious directive to do so from that state's high court.

■ Furthermore, the Court does not believe that the adoption of either the previ-

ously-mentioned landlord lien legislation, Nev.Rev.Stat. 108.510, *et seq.*, (now repealed), or the newer Nev.Rev.Stat. 118A would have any restrictive effect upon the use of the statute of 8 Anne, ch. 14, in the present case. Both laws were limited in their scope, by the Nevada Legislature, to the creation of property interests in landlords as against the chattels of their tenants. Neither speaks in terms of execution priorities. Moreover, the landlord lien act is no longer in effect, leaving the courts to rely upon its successor, Nev.Rev.Stat. 118A, or upon the common law, for guidance in such matters.

Although Nev.Rev.Stat. 118A.520(2) specifically abolishes distraint, its provisions are limited to leaseholds in dwelling units and their premises. Nev.Rev.Stat. 118A.180(1) (1977) (the earlier Nevada Landlord Lien Act also applied only to dwellings). Here we are admittedly dealing with a lease of commercial property. The equitable factors which may have warranted the Nevada Legislature in abolishing distraint in residential settings is thus lost where, as here, the parties are business entities of approximately equal bargaining ability and strength.

> "'Although the common law may be impliedly repealed by a statute which is inconsistent therewith, or which undertakes to revise and cover the whole subject matter, repeal by implication is not favored, and this result will be reached only where there is a fair repugnance between the common law and the statute, and both cannot be carried into effect.'
>
> " . . . .
>
> "Statutes in derogation of the common law are to be strictly construed. . . ."

*West Indies v. First Nat'l Bank*, 67 Nev. 13, 32–33, 214 P.2d 144, 153–54 (1950), *citing*, 15 C.J.S., *Commerce* § 12, at 620. *See also Smith v. Chipman*, 220 Or. 188, 348 P.2d 441 (1960) (statutory landlord's relief right held to be dissimilar enough from common law right of distress to be deemed not to have replaced the more ancient remedy).

The Court finds itself unwilling to overlook, at the Trustee's behest, the priority right granted under 8 Anne, ch. 14, and unable to find Nevada-oriented judicial or legislative authority for the abrogation of that right. Based upon this statute, therefore, the court must hold that First Wisconsin National Bank has a priority under section 64(a)(5) of the Bankruptcy Act. Denial of the Trustee's objection is in order for those rents accruing during the three-month period immediately preceding the filing of the instant petition. The Court will file an appropriate order herewith.

This Memorandum Opinion shall serve, for all purposes and pursuant to Federal Bankruptcy Rule 752, as the Findings of Fact and Conclusions of Law of the Court in this matter.